FARMERS' LOAN & TRUST CO. v. NORTHERN PAC. R. CO. et al.

(Circuit Court, E. D. Wisconsin. April 26, 1894.)

1. RECEIVERS—PROCEEDINGS FOR REMOVAL.

On an application for removal of receivers for cause, specific charges should be presented, with proofs, which should be met by the receivers; and a reference to take proofs therein does not follow as of course, but, the application being addressed to the sound discretion of the court, it is first to be determined whether the charges are sufficiently grave to call for answer, and are properly pleaded, and, if answered, whether they are sufficiently refuted; and it rests with the court, if not fully satisfied with respect to the charges stated, to refer the matter for proof, either generally, touching all the charges, or limited to matters in respect of which the court desires further explanation.

2. SAME.

Indefiniteness and want of directness in such charges against receivers, although, by answering, they waive their right to object, may be considered by the court, in determining whether further investigation is required.

3. RAILROAD COMPANIES—RECEIVERS—APPOINTMENT OF OFFICER.

One of three receivers of a railroad company operating a transcontinental system was appointed at the request of the trustee in all but one

of the mortgages on the railway, and on the recommendation of the bond-holders secured thereby, with the express assent of the railroad company. He had been for many years in the service of the company as general manager of the railway, and as director, vice president, and president of the company; was thoroughly familiar with its history and conditions and necessities; and was a thoroughly competent railroad manager. The proofs established that the road had been managed with prudence and economy, so far as concerned its actual operation, and no fault therein was suggested. *Held,* that the fact that he was an officer and director of the company at the time of his appointment was no ground for revocation thereof.

This was a suit by the Farmers' Loan & Trust Company against the Northern Pacific Railroad Company and others to foreclose certain mortgages of the property of the railroad company, in which Thomas F. Oakes, Henry C. Payne, and Henry C. Rouse were appointed receivers. Thereafter, a petition for removal of the receivers was filed by the railroad company, to which separate answers were filed by the receivers and by the complainant and certain creditors and stockholders, parties defendant. Thereupon, the railroad company moved for a reference to take testimony in respect of the matters stated in the petition.

Silas W. Pettit and John F. Harper, for the motion.

James McNaught, John C. Spooner, and Geo. P. Miller, for the receivers.

H. B. Turner and James G. Flanders, for Farmers' Loan & Trust Co.

W. J. Gibson, for Phillip B. Winston, opposed.

JENKINS, Circuit Judge. On the 28th of December, 1893, the defendant company filed in this court its petition praying for the removal of Messrs. Thomas F. Oakes, Henry C. Payne, and Henry C. Rouse, the receivers of the Northern Pacific Railroad. These gentlemen were appointed such receivers upon the prayer of the complainant, the trustee in all but one of the mortgages upon the railway, and of certain stockholders and creditors of the company, and with the assent of the Northern Pacific Railroad Company. Mr. Oakes, one of the receivers, had for many years been connected with the railway in question, having acted as a director of the company from October 19, 1881, until October 18, 1893; vice president of the company from June 9, 1881, to September 20, 1888; general manager from October 2, 1884, to September 20, 1888; and president from that date until October 18, 1893, when a new board of directors was elected, and Mr. Brayton Ives was by such board elected president, and Mr. Robert Harris vice president, of the company. Upon the filing of the petition, which was verified by Mr. Harris, an order was entered, directing that the receivers answer thereto. Subsequently, and on the 3d day of February, 1893, the receivers filed their separate answers, and separate answers to the petition were also filed by the complainant, the Farmers' Loan & Trust Company, the trustee, and by the defendants W. C. Sheldon & Co. and Phillip B. Winston, creditors and stockholders, upon whose application the receivers had been appointed. The matter then coming on to be heard, it was urged on behalf of the

petitioner that the issues should be referred generally for proof with respect to the matters stated in the petition and answers. This was opposed by counsel for the receivers upon the ground that the allegations of the petition were indefinite, and not specific; that the petition was unaccompanied by proofs, and the charges contained in it had been fully met and overcome, not alone by the denial of the receivers, but by the proofs submitted therewith.

This contention presents for consideration a preliminary question with respect to the correct practice in such cases. At the hearing I held, in effect, that the application was a motion to remove the receivers for cause, and that the moving party should present specific charges, accompanied with proofs, which should be met by the parties proceeded against; that in such case it did not follow, as of course, that there should be an order of reference to take proofs, as upon issue joined upon bill, answer, and replication, but that, the application for removal being in the nature of a motion addressed to the sound discretion of the court, it should first be considered and determined whether the charges were sufficiently grave in their nature to call for answer, and were properly pleaded, and, if answered to, whether they had been sufficiently refuted to satisfy the court with respect to the integrity and competency of its officers; and that it rested with the court, if it was not wholly and fully satisfied with respect to the charges stated in the petition, to refer the matter for proof, either generally, touching all the charges of the petition, or limited to such matters in respect of which the court desired further explanation. And this I conceive to be the proper practice in such cases. In general, the party who asks the court to remove one of its officers for malfeasance or incompetency should be prepared, not only to prefer specific charges of wrongdoing, but to accompany them with proof. It ought not to be tolerated that upon mere vague and unsupported charges one should be compelled to submit to a sweeping investigation into his conduct, and that upon such charges a court could properly be asked to order a general investigation to ascertain whether something might not be found objectionable to his standing. It is a fundamental and most just principle of law that one should not be put to answer vague and indefinite charges. Nor, in general, as to a specific charge of malfeasance, should one be put to his defense, in the absence of evidence tending to sustain the charge. The allegations in this petition are, in respect of some of the charges, indefinite, and wanting in directness, to the extent, as I now view it, that had application been timely made to require the petitioners to make the charges, in the respects objected to, definite and specific, I should have felt compelled to grant the motion. The receivers have, however, seen proper to answer this petition, and at great length. They have thereby, as I think, waived their right to object to it for want of directness of charge,—so far, at least, as to claim that the court ought not to consider it at all, or, if proper reasons exist for such course, to order a reference to inquire with respect to its truth. The court should, however, give weight to the fact that some of the charges are wanting in directness, in determining the question whether, in the light of

the answers, and the proofs therewith submitted, such indefinite charges require further investigation.

I proceed, therefore, to inquire respecting this petition and the showing made in opposition thereto, whether the charges have been fully and satisfactorily answered. Upon the threshold of the inquiry the objection is preferred that Mr. Oakes, one of the receivers, was an officer of the company, for a long time connected with its affairs; that he was officially and responsibly connected with the management which brought the company's affairs to ruin, and therefore should never have been appointed receiver, and should now be removed. The office and duty of a receiver is to hold and preserve the property in controversy during the time that it may remain in the custody of the court. A receiver should, in a large sense, be indifferent, as between the various interests involved. He should have no such personal interest as would interfere with an unbiased and impartial exercise of his duties as receiver. I quite agree with the doctrine that, in general, one who was a director or managing officer of a corporation at the time of its suspension ought not to be appointed its receiver. Mr. High, in his valuable work upon Receivers (section 72), well states the principle upon which the courts act to be "that, if the officers of a corporation are unfit persons for the management of its affairs in their official capacity, they are equally unfit to be intrusted with its management in the capacity of receivers;" and he states the rule of exclusion to be based upon sound principles of public policy. The rule, however, is not inflexible, and is necessarily departed from when it is apparent, in view of the knowledge and familiarity of a particular person with the estate taken in charge by the court, that its best interests will be promoted by his appointment. Sykes v. Hastings, 11 Ves. 363; Newport v. Bury, 23 Beav. 30. This must, however, be understood as subject to the qualification that the integrity of the officer is above successful attack, and that the disaster of the corporation was not promoted by his reckless management. The case of a railway furnishes, perhaps, the most notable instance of the necessity of departure from the rule. Railway management has become a profession. A railway is not a toy that may be trifled with. Its management requires great financial and executive ability, and the practical experience of years. Railway management stands apart as a specialty. The ablest men in other professions and in other walks of life would probably fail in the successful direction of the affairs of a railway, if they are wanting in that knowledge of its needs and requirements that may only be obtained by long experience in its practical management and operation. For the operation of a vast system like that of the Northern Pacific, it seemed desirable that one of its receivers should be a gentleman familiar with the intricate details of its history, and with the necessities peculiar to the system, for, however well qualified one might be with respect to railway management in general, he would, at least for a considerable time, be at sea in the management of a transcontinental line, of whose history he was ignorant, and with the necessities of which he was not familiar. I fully agree with the observation of Judge Gresham in Atkins v.

Railway Co., 29 Fed. 161, that "receivers should be impartial between the parties in interest, and stockholders and directors should not be appointed receivers, unless the case is exceptional and urgent." And his suggestion was followed that such appointment should be made "only on consent of the parties whose interests are to be intrusted to their charge."

This appointment was made at the request of, and upon the nomination by, the trustee of the second and third general and of the consolidated mortgages, the representative of over $160,000,000 of bonded debt, upon the recommendation of the bondholders who were co-complainants with the trustee, and with the express assent of the Northern Pacific Railroad Company. The appointment was made because Mr. Oakes was represented and was deemed to be a most fit person for that position. He had been for many years in the service of the company as general manager of the railway, and as director, vice president, and president of the company; was thoroughly familiar with its history, and its conditions and necessities. Beyond all contention, then or now, he is a thoroughly competent railroad manager. It was made to appear from a comparative table of the earnings of the Northern Pacific, the Canadian Pacific, the Union Pacific, the Central Pacific, the Southern Pacific, the Atlantic & Pacific, the Atchison, Topeka & Santa Fe, the Chicago & Northwestern, and the Chicago, Milwaukee & St. Paul Railways, that from the year 1884 to and including the year 1893 the percentage of expenses to earnings of the Northern Pacific was, with the exception of the years 1884 and 1885, lower than any one of the other companies named, and during the two years mentioned was lower than any of the other companies named, except the Central Pacific and Atchison, Topeka & Santa Fe. During the 10 years mentioned the percentage of expense to earnings was less than that of the Chicago & Northwestern Railway Company,—confessedly, one of the best and most honestly managed railways in the country; the operating expenses being, in the year 1884, 3.56 per cent. less; in 1891, being 4.58 per cent. less; in 1892, being 5.61 per cent. less; and in 1893, 5.72 per cent. less. The proofs before the court established, so far as concerns the actual operation of the road, that it was managed with prudence and economy. There is no suggestion to the court of fault in the operation of the railway. I am therefore persuaded that the case here is within the exceptional class referred to by Judge Gresham, and that the appointment was not only justifiable, but was demanded by the exigency of the occasion. There is no ground, therefore, upon which to assert that the appointment of Mr. Oakes should be revoked merely because he was an officer and director of the company at the time of his appointment. If there be cause for his removal, it must be elsewhere sought for, and based upon other ground. * * *

The court then reviews at length the charges of the petition, and the answers thereto; dismissing the petition as to Messrs. Payne and Rouse, receivers; asserting, as against them, no substantial cause for removal; retaining the petition as to Mr. Oakes; and referring to a master, for investigation, certain of the charges preferred in the petition.