RALSTON v. WASHINGTON & C. R. RY. CO. (LADD et al., Interveners).

(Circuit Court, D. Washington, S. D. January 14, 1895.)

RECEIVERS—APPOINTMENT OF OFFICER OF INSOLVENT CORPORATION.

Although, when a court assumes control of the affairs of an insolvent corporation, it is preferable to take it entirely out of the hands of its managing officers, yet there is no inflexible rule rendering such officers ineligible as receivers; and in a case where the trustee prosecuting the foreclosure under which the receiver is appointed is authorized by the mortgage to nominate a receiver, and nominates an officer of the corporation, who is known to the judge making the appointment to be a capable, honest, and fair-minded man, who has managed the property well, under adverse circumstances, it is proper to appoint such officer receiver.

This was a suit by Robert Ralston, as trustee, against the Washington & Columbia River Railway Company, for the foreclosure of a mortgage. W. D. Tyler, president of the corporation, was appointed receiver. W. M. Ladd and others, composing the firm of Ladd & Tilton, holders of bonds, intervened, and moved for the removal of the receiver.

L. L. McArthur, for complainant and C. B. Wright.

B. L. Sharpstein and John L. Sharpstein, for defendant.

Williams, Wood & Linthicum and J. C. Flanders, for interveners.

John B. Allen, for receiver.

HANFORD, District Judge. The complainant, as trustee for the holders of bonds of the Washington & Columbia River Railway Company, filed his bill of complaint, setting forth a mortgage upon all the property of said corporation, given to secure payment of the principal and interest of said bonds, and alleging, in substance, that installments of interest on said bonds had become due and were unpaid; that said corporation is insolvent; that the complainant had been duly selected and constituted as trustee in place of the trustee named in said mortgage, and had been requested by C. B. Wright, the holder of more than three-fourths of said bonds, to bring this suit to foreclose said mortgage,—and praying for a decree of foreclosure of the mortgage, and sale of the property, and for the appointment of W. D. Tyler, president of said corporation, as receiver, to take immediate charge of the railway, and manage the same during the pendency of this suit. The mortgage contains provisions authorizing the trustee, in case of default in the payment of any installment of interest, to declare the whole debt due, and proceed at once to foreclose and to have a receiver appointed, and to choose a receiver. Upon application of the complainant, after notice to the defendant corporation, one of the judges of this court, in chambers, appointed said Tyler receiver of said corporation, with power to manage the business and operate the railway; and he has accepted the appointment, and is now acting as such receiver. William M. Ladd and others, composing the firm of Ladd & Tilton, obtained leave to intervene in the suit, and thereupon filed a petition alleging that said firm holds certain bonds secured by said mortgage; that the selec-

tion of complainant as trustee was without their knowledge or consent; that this suit was commenced, and said appointment of a receiver was made, without previous notice to them, and without their knowledge or consent; that the foreclosure of said mortgage and sale of the railway at the present time will necessarily cause a sacrifice on their part, and by reason of facts alleged, as to the manner in which said C. B. Wright had induced them to exchange other securities for the bonds which they now hold, the suit is inequitable; that said Tyler is objectionable to them as receiver, on account of his position as president of the defendant corporation, and his past and present relations with Wright, and he is charged with having mismanaged the railway, and diverted its earnings for the benefit of Wright. Wherefore, the interveners ask to have the appointment of Tyler as receiver set aside, and a disinterested person substituted. Pursuant to an order of the court requiring them to answer said petition, all the parties to the suit and Wright and Tyler have filed answers, and to said answers the interveners have excepted for insufficiency. Upon the hearing of said exceptions, counsel for the interveners, in his argument, frankly abandoned all the charges against Mr. Tyler of collusion with Wright to fraudulently mismanage the railway, and has rested his case against the receiver on the ground that he is an unsuitable person to be receiver, because of his past connection with the railway as president and manager, and because he was nominated by the trustee in the interest of Mr. Wright, who owns the stock of the corporation, and, for himself and others, holds most of the bonds.

In appointing this receiver, I took into account the fact that the mortgage authorizes the trustee to choose a receiver; and I assumed that all the parties interested would be satisfied to have his nominee confirmed, but I was not controlled by these considerations. I have known Mr. Tyler personally for several years, and at the time of acting upon said application I had perfect confidence in his capacity, integrity, and fairness. I considered him a suitable person to administer the trust, and for that reason, mainly, gave him the appointment. And now, after having canvassed the situation in the light of the showing made by the parties, respectively, I still hold Mr. Tyler in the same high estimation, and consider that his appointment was in fact prudent. I concede that, when a court assumes control of the affairs of an insolvent corporation, it is preferable to take it entirely out of the hands of its managing officers. But there is no inflexible rule rendering such officers ineligible to appointment as receivers. I also assent to the proposition advanced by counsel for the interveners, that the rule of managing officers, whose mismanagement has resulted in bringing a corporation into a condition of insolvency, should not be perpetuated by continuing them or their subservient agents in charge as receivers. The Washington & Columbia River Railway Company was organized after a sale of the railway and its appurtenances under a decree of foreclosure against another corporation, which formerly owned it, and which had become insolvent. The property transferred by said sale

was deficient in rolling stock, stations, warehouses, and necessary equipments, and included no right to ground for terminals and stations at the most important towns on the line of the railway, other than options to purchase. During the time of Mr. Tyler's incumbency as president of the new company, its business has been seriously affected by the financial stringency which has prevailed throughout the whole country for the past three years; and yet, by his answer, it appears that he has so managed the property that he has, from its surplus earnings above operating expenses, acquired and paid for terminal and station ground, built station buildings and freight houses, and made betterments which were absolutely necessary. He has honestly applied the whole income of the company to the legitimate uses of the company. He has not conducted its business so as to bring on insolvency. On the contrary, he took charge of an incompleted and partially equipped railway, overburdened with an interest-bearing debt, and, in hard times, has made it serve the public well, paid operating expenses and taxes, and actually improved its condition. My conclusion is that Mr. Tyler's good management as president of the company; his knowledge of its requirements, gained by practical experience; his well-known character as a capable, honest, and fair-minded man; and the right of the trustee to choose a receiver, stipulated in the mortgage sued on,—outweigh all objections urged by the interveners. Their application is therefore denied.