### COY v. TITLE GUARANTEE & TRUST CO. et al.

(Circuit Court, D. Oregon. December 12, 1907.)

No. 3,209.

1. CORPORATIONS—RECEIVERS—ELIGIBILITY FOR APPOINTMENT—OFFICERS.

It is a rule of general application that a receiver should be a person wholly impartial and indifferent toward all parties interested in the fund or property to be administered, and, generally speaking, officers and directors of a corporation involved in insolvency should not be appointed to the position. Although this rule is not inflexible, it should be observed where such officers or directors have by their bad management contributed to the insolvency.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2237.]

2. BANKS AND BANKING—INSOLVENCY—RECEIVERS—ELIGIBILITY.

Where a large part of the assets of an insolvent banking corporation consists of obligations of subsidiary companies and firms formed by its officers and largely financed by it, an officer and director who, although not an active participant in such transactions, was cognizant of and consented to them, should not be appointed or continued as its receiver.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 165.]

In Equity. On motion for removal of receiver.

Joseph Simon, for plaintiff and receiver.

C. A. Bell, for American Surety Co.

Spencer & Farrell, McAllister & Upton, and Long & Sweek, for petitioning creditors.

A. M. Crawford, Atty. Gen., for state of Oregon.

WOLVERTON, District Judge. N. Coy, having on the 6th day of November, 1907, filed his bill of complaint showing the insolvency of the Title Guarantee & Trust Company, applied for the appointment of a receiver. There was an appearance at the time, through

counsel, by all the defendants except F. M. Warren, and, the complainant suggesting, and all the said defendants except Warren consenting, I accordingly appointed George H. Hill as such receiver. N. Coy is a large stockholder, and Mr. Hill is a stockholder and director and the vice president of the trust company. Since the appointment petitions have been filed in behalf of the state of Oregon, which claims to be a large creditor of the company, and by many depositors of the bank, praying that Hill be removed, and that some suitable person be appointed in his stead.

It is unnecessary to recite in detail the allegations showing cause for his removal; and I will refer simply to a charge that is set up by R. E. Little, which is that the Title Guarantee & Trust Company was up to the 6th day of November, 1907, actively engaged in business transactions of various kinds and character in the city of Portland, Or.; that, for the purpose of carrying on certain of such transactions, the said company caused to be formed subsidiary corporations, the names of which are unknown to the affiant; that the affiant is informed and believes that the records of said company show that various of the officers and directors of said company are personally interested in said subsidiary corporations, and that, in pursuance of the banking operations carried on by said company, various loans have been made to corporations in which various of the officers and directors of said Title Guarantee & Trust Company are stockholders. This charge is undenied by Mr. Hill, although he has set out in particular his connection with the Title Guarantee & Trust Company, the effect of which is that he was only nominally vice president and director of the concern, and that the business was controlled and directed exclusively by the other officers and directors. It seems to be conceded that a number of subsidiary corporations were organized for the purpose of engaging in business having no relation to the business of banking; that the officers and stockholders of the trust company became and were officers and stockholders of these subsidiary corporations; and that, to enable these subsidiary corporations to carry on the business for which they were organized, large sums of money were loaned to them by the trust company; and that thereby the trust company has become involved, which transactions were in some, if not in large measure, the cause of the trust company's present difficulties. Indeed, this statement is verified by the report of Mr. Hill of the assets and holdings of the trust company, filed since the applications for removal were presented and submitted to the court for consideration. The report shows that the loans and discounts, including mortgage loans, amount to $1,007,884.59. To this there should be added the list representing loans and discounts with the First National Bank and George A. Steel, $607,075.94, aggregating $1,614,960.53. Of this aggregate, from a cursory estimate I have made, $616,149.83 represents loans and discounts made to subsidiary companies. These are not all corporations. In some instances the subsidiary business was apparently carried on under a firm name (of which A. C. Burdick & Co. is an instance), and the funds of the bank loaned to such company. So that more than one-third of the loans and discounts, including mortgages, is to these subsidiary com-

panies. Two other species of assets are bonds owned by the trust company, valued at $285,000, and stocks valued at $578,734.67, aggregating $863,734.67, a large proportion of which are the bonds and stocks of these subsidiary companies. I am not informed as to the solvency of these companies; but whether they are able to respond to the parent company's demands against them or not does not alter the case. The system was, to say the least, an irregular one for a banking concern to adopt or engage in. It made the officers of the trust company responsible for the success of the subsidiary concerns, and upon their success depended the ability of such concerns to repay their loans and discounts. In other words, the system was to use the depositors' funds for financing these subsidiary companies and corporations, instead of making loans and discounts in the regular way, as all banks are supposed to do, and most depositors assume that they will do. While not an active participant in this branch of the business of the trust company, Mr. Hill was cognizant of the method pursued, and in his capacity of director and vice president gave his assent thereto; and his association with the other officers, who were the very embodiment of the system, was necessarily close and intimate. Such being the situation, it remains only to apply the law, which is well settled, for a determination of the controversy.

It is a rule of general application that a receiver should be a person wholly impartial and indifferent towards all parties interested in the fund or property over which the court has found it necessary to extend its care and protection. High on Receivers, § 1; Farmers' Loan & Trust Co. v. Northern Pac. R. Co. (C. C.) 61 Fed. 546. Generally speaking, also, officers and directors of the corporation involved by insolvency should not be appointed to the position. But this rule is not inflexible, and it has occurred in matters of great importance that officers in high place have been deemed the best qualified and the most appropriate persons to administer the trust. Farmers' Loan & Trust Co. v. Northern Pac. R. Co., supra; Fowler v. Jarvis-Conklin Mortg. Co. (C. C.) 63 Fed. 888; Ralston v. Washington & C. R. Ry. Co. (C. C.) 65 Fed. 557; Land, Title & Trust Co. v. Asphalt Co. of America (C. C.) 120 Fed. 996. Where the officers and directors of an insolvent concern have, by their bad management, contributed to its ill success, it is not deemed expedient or proper that one of them should be named as a receiver. High on Receivers, § 72; Finance Co. v. Charleston, C. & C. R. Co. (C. C.) 45 Fed. 436. The receiver is the officer of the court. He is the arm by which the court reaches out and controls and manages the property, for the purpose of settling up the estate and distributing the proceeds among those who are entitled thereto; and, as the court should be impartial in the management of such an estate, so it is highly essential that the receiver should also be impartial, and carry out the instructions of the court with conscientious endeavor to do right towards all persons concerned. In the appointment of Mr. Hill as receiver, in the first instance, having known of him for some years, I had confidence in his integrity and his ability to successfully wind up the business of this company. As yet I have confidence in his integrity. But while, as he says, he was only nominally a director and vice president, yet

he has, as previously stated, given his name and assent to the objectionable policy of the trust company, which policy has undoubtedly been the chief cause of its downfall, and, if required by his position to antagonize the interests thus built up, or the parties really concerned in their promotion, it would be gravely questioned whether he would or could act altogether indifferently.

Being thus involved, I am of the opinion that he should be relieved of the trust; and such will be the order of the court.