No. 21,880.

THE WASHINGTON NATIONAL BANK, *Appellee,* v. J. H. MYERS, *Appellant.*

SYLLABUS BY THE COURT.

1. AWARD OF ARBITRATORS — *Proceedings Thereon.* There was nothing pleaded or shown to impeach the award of the arbitrators set up by the plaintiff.

2. SAME. It was not error to take the date of the note in controversy as the starting place for the introduction of evidence.

3. SAME—*Pleadings—Election of Cause of Action.* It was not error to deny the defendant's motion to require the plaintiff to elect as to its causes of action.

4. SAME—*Appointment of Referee Discretionary.* The appointment of a referee is not mandatory, but discretionary, and the trial court did not abuse its discretion by refusing to appoint.

5. SAME—*New Trial—Rejected Evidence Not Produced—Not Reviewable.* The rejected evidence was not produced on the hearing of the motion for a new trial, and for that reason, if there were no other, it cannot be considered. (Civ. Code, § 307.)

Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed April 12, 1919. Affirmed.

*Edgar Bennett,* of Washington, for the appellant.

*A. J. Freeborn,* and *Charles Smith,* both of Washington, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from an adverse judgment and complains of the action of the court in overruling his motion to require the plaintiff to elect, in overruling his application to refer the case, and in overruling his demurrer to the plaintiff's evidence. He also complains of the ruling that the action began at the date of the note involved herein, of the refusal to hear evidence prior to that date, and of the rejection of certain offered evidence.

The defendant was related to some of the officers of the bank and had had an account there for some time. On September 18, 1914, he executed to the order of the plaintiff his promissory note for $1,000, payable on demand. A dispute arose as to

whether or not this note had been paid, and on February 17, 1915, he signed a receipt for its return, reciting that it had been duly stamped "paid" at his request, and that he claimed he did not owe it, followed by these words:

"If I ever find that an error has been made by me I do hereby agree to pay The Washington National Bank, Washington, Kansas, said $1,000 according to agreement on said note."

In August, 1916, the parties entered into an arbitration agreement reciting that they were desirous of settling their dispute and differences, and agreeing that the arbitrators should "examine into the account between said bank and the said J. H. Myers, including a certain promissory note, in writing, in the sum of one thousand (1,000.00) dollars, dated September the 18th, 1914, . . . and all other transactions between the said J. H. Myers and said bank, from and after the 13th day of October, 1909."

The report of the arbitrators recited:

"We . . . having heard the proofs and allegations . . . and having examined the matters in controversy by them submitted, do make this award in writing. . . . We, the aforesaid board, . . . have carefully examined and checked the account of the said J. H. Myers in regard to all his transactions with the said Washington National Bank, of Washington, Kansas, beginning Oct. 13, 1909, . . . as to all deposits made and checks drawn by him on the said bank, also notes given by him to the said bank for credit and renewal, and all other transactions up to and including April 6, 1915, after which date there appears to be no further business transacted by the said Myers with the said bank."

The arbitrators found that he owed the $1,000 on the note referred to.

It was alleged that the defendant acquiesced in the award and orally promised to pay it.

Two of the arbitrators testified that Mr. Myers was present when they examined the several items which he called to their attention, and that they examined all the evidence presented by him, and one of them stated that they went over seven or eight years' business. The cashier of the plaintiff bank testified that a short time after the board met, the defendant called him into the back room and said, of course, he would have to borrow the money, but that he would come in in a few days and settle up. It does not appear that this was denied by the defendant.

The petition alleged the execution of the note, the circum-

stance of its return, the receipt given therefor, the subsequent arbitration and the result thereof, the defendant's failure to acquiesce in the award and his oral promise to pay, and alleged his failure to pay or return the note.

The answer denied that the arbitrators went fully into the matters in controversy and alleged numerous errors made by the bank during the defendant's patronage thereof; denied his indebtedness; and alleged a complete settlement made with the bank February 17, 1915.

When the case came on for trial there was considerable discussion about whether the petition should be construed as seeking to recover on the note or on one of the subsequent agreements. One of the plaintiff's counsel replied that it took all of the petition to state the case "and we therefore stand upon all of the petition." Later this counsel said:

"We stand upon the judgment rendered by a court of arbitration, and to my mind it is purely a question of law as to whether that arbitration is legal or not."

His co-counsel stated he stood with his colleague; that there was no difference between them, saying:

"We stand upon the debt; we claim there is an indebtedness due the plaintiff and the allegations of our petition is to that effect."

In this colloquy it was said that when the matter was up on ·a motion to elect, the court had said that it thought four causes of action were stated, and that if the plaintiff elected to stand on one, the others would be dismissed, which statement was why counsel now stood on all of them, "and it takes all of them to make our case." Finally, the court announced, in substance, that it would hold that the cause of action was based upon an alleged indebtedness, and that the various statements were incidents alleged to show that indebtedness.

The defendant offered to show that he was not in debt when he gave the note, and offered to show various payments during the time covered by the arbitrators, for which he had not been given credit by the bank. This was refused.

The evidence shows that the arbitrators went all over the account and the dealings of the parties from 1909 to April, 1915, and that the defendant said he would pay the award. No fraud is alleged touching the arbitration, and the mere averment that the board "did not fully and carefully investigate and consider all the matters and things relating to the

Bank v. Myers.

controversy" is not such a charge of fraud as to impeach the award. (2 R. C. L. 389, § 34. See, also, *Miller v. Brumbaugh,* 7 Kan. 343; *Weir v. West,* 27 Kan. 650; *Russell v. Seery,* 52 Kan. 736, 35 Pac. 812; *Thompson v. Barber,* 87 Kan. 692, 125 Pac. 33; *Swisher v. Dunn,* 89 Kan. 412, 131 Pac. 571.)

Neither was it error to take the date of the note as the starting point. The arbitrators had gone clear back to 1909, and there was nothing pleaded or shown to impeach their award, and as there ought to be an end, so there should be a beginning of litigation.

The rulings as to election, causes of action, and the date of the starting place were made in time to save the defendant any disaster by surprise. Indeed, no request for time or continuance was made, but the trial proceeded without objection.

Complaint is made that the court tried the case, instead of submitting it to a referee. There is no claim that full time was not given to present the facts and, of course, it is not intimated that any chosen referee would have been abler or fairer than the trial judge. The appointment is not compulsory, but discretionary. (Civ. Code, § 299.) The discretion was not abused.

(*Martin v. Windsor Hotel Co.,* 70 N. Y. 101; *Maxwell v. Cottle,* 25 N. Y. Supp. 635; *Farmers' Loan & Trust Co. v. Northern Pac. R. Co.,* 61 Fed. 546; *Pierce v. Thompson,* 6 Pick. [Mass.] 192; *Fortune v. Watkins,* 94 N. C. 304.)

Finally, the rejected evidence was not produced on the hearing of the motion for a new trial (Civ. Code, § 307), and the trial court's construction of the petition was correct.

The judgment is affirmed.